Breitel, J. (concurring).
I concur but only on constraint of Seider v. Roth (17 N Y 2d 111) so recently decided by this court. Only a major reappraisal by the court, rather than the accident of a change in its composition, would justify the overruling of that precedent. Yet the theoretical unsoundness of the Seider case and the undesirable practical consequences of its rule require .some comment if only, perhaps, to hasten the day of its overruling or its annulment by legislation.
It is the most tenuous of nominalist thinking that accords the status of an asset, leviable and attachable, to a contingent liability to defend and indemnify under a public liability insurance policy.
The applicable statutes are CPLR 5201 (subd. [a]) and 6202. They read as follows:
“ (a) Debt against which a money judgment may be enforced. A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or non-resident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.” (5201, subd. [a])
and
“Debt or property subject to attachment; proper garnishee. Any debt or property against which a money judgment may be *315 enforced as provided in section 5201 .is subject to attachment. The proper garnishee of any such property or debt is the person designated in section 5201; for the purpose of applying the provisions to attachment, references to a ‘ judgment debtor ’ in section 5201 and in subdivision (h) of section 105 shall be construed to mean ‘ defendant ’ ” (6202).
True, these contemporary statutes are designed to reach every kind of marketable and assignable property, and every kind of right that is reducible to marketable or assignable economic value. They refer to debts and property, and in the case of causes of action they must be assignable. But they are not intended or designed to reach every obligation created by contract, however inchoate, conditional, contingent, or personal. The obligation to defend and, even more, the obligation to indemnify are just such inchoate, conditional, contingent, and personal obligations. Before they come into play, there must be an external event (usually an accident) within the coverage of the policy, performance of conditions precedent by the insured, and co-operation by the insured. Even then, if the insurer’s obligation to defend is fully performed, there is nothing of economic value to which the insured may make claim, receive, or assign. As to the obligation to indemnify, that does not ripen until accident, defense, and defeat resulting in judgment against the insured.
The statutes, in making intangible assets leviable and attachable, are not intended to reach the intangible right as such but instead to reach the tangibles that eventually must result from the intangible right. Thus, at the very least, before any intangible right has practical significance as an asset to be levied upon or attached, it must give promise of being translatable into an economically valuable tangible, usually cash. The instances are easiest for application of the statutes when, unlike here, the intangible right is marketable or assignable. Hence, the inappropriateness of precedents based upon life insurance policies (matured or unmatured), upon property or fidelity loss policies after loss, and the like. In each of such instances the insured’s right to tangible funds has attained a cognizable probability of being translated into funds.
So much for the analysis of the rights involved, no merely theoretical matter, but one which goes to the usefulness of the
*316 legal concepts employed, which must have some root in reality. As for the effect of the rule, the practical consequences are highly undesirable. This State, and particularly its chief city, is the mecca for those seeking high verdicts in personal injury cases (see, e.g., Gilchrist v. Trans-Canada Air Lines, 27 A D 2d 524). On the basis of the.rule in the Seider case, it will be the rare plaintiff who cannot invoke the jurisdiction of New York courts, even though only quasi in rem, since it will be a very small insurance company that does not have a palpable contact with this State.
Finally, it is hardly necessary to analyze further the vulnerability of the rule, since that task was accomplished so well by the dissent of Judge Burke in the Seider case. But the temptation is great to repeat Judge Burke’s exposure of the fallacy underlying the rule, namely, “ The existence of the policy is used as a sufficient basis for jurisdiction to start the very action necessary to activate the insurer’s obligation under the policy. In other words, the promise to defend the insured is assumed to furnish the jurisdiction for a civil suit which must be validly commenced before the obligation to defend can possibly accrue ” (17 N Y 2d 111, 115, supra).
Adverse and strident criticism by disinterested commentators on the rule is not without significance (e.g., Prof. David D. Siegel, Supplementary Commentaries to CPLR 5201; McKinney’s Cons. Laws of N. Y., Book 7B [1967 Cum. Sup.], pp. 13-21, 23-31; Comment, “ Garnishment of Intangibles,” 67 Col. L. Rev. 550 [1967]; 71 Dick. L. Rev. 653 [1967]).
I do not reach the constitutional issues raised. If the court was right in the Seider case, then there is no constitutional question. If it was wrong, there still might be no constitutional question. But it could not have decided the substantive question without assuming a reality in the “ obligation ” being attached that would satisfy constitutional standards.
Accordingly, I concur to affirm but only because the institutional stability of a court is more important than any single tolerable error which I may believe it has committed.